RICHARDS v. LOWRIE & WEBB LUMBER CO.

1. PRINCIPAL AND AGENT—APPARENT AUTHORITY.
    When a principal cloaks his agent with apparent authority to do an act not actually authorized, the principal is bound thereby.

2. SAME—APPARENT AUTHORITY—EVIDENCE.
    The apparent authority for which the principal may be liable must, however, be traceable to him and cannot be established by the acts and conduct of the agent.

3. VENDOR AND PURCHASER—AUTHORITY OF CORPORATE VENDOR'S CREDIT MANAGER—BURDEN OF PROOF.
    In suit for specific performance of a land contract, signed on behalf of defendant corporate vendor by its credit manager, plaintiff failed to sustain its burden of establishing that credit manager possessed authority, actual or apparent, to bind defendant.

4. PRINCIPAL AND AGENT—RATIFICATION—EVIDENCE.
    Ratification of acts of corporate defendant's credit manager in accepting checks given by plaintiffs under land contract

---

Apparent authority must be based on acts of principal and not of agent, see 1 Restatement, Agency, §§ 27, 52, comment b.

*held,* not to have been established merely because checks were accepted where they were credited to plaintiffs' on rent account rather than as payments on contract. '

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—SPECIFIC PERFORMANCE—PRINCIPAL AND AGENT—STATUTE OF FRAUDS.

Application of statute of frauds and effect thereon of claimed part performance is not discussed in suit for specific performance of a land contract where corporate defendant's agent is not shown to have had authority to sell the premises (3 Comp. Laws 1929, §§ 13413, 13415).

6. ESTOPPEL—KNOWLEDGE OF MATERIAL FACTS.

One who is cognizant of all material facts can claim nothing by estoppel.

7. SAME—PREJUDICE.

There can be no estoppel unless a party is misled to his prejudice by the one against whom it is set up.

8. CORPORATIONS—PRINCIPAL AND AGENT—ESTOPPEL.

Defendant corporation, in whose behalf plaintiffs claimed its credit manager had executed land contract of which specific performance was sought, was not equitably estopped from asserting invalidity and unenforceability by reason of accepting certain checks and permitting plaintiffs to make repairs on the property where plaintiffs knew contract needed the approval of the corporation and that they were relying upon the words and actions of an unauthorized agent.

9. PRINCIPAL AND AGENT—AUTHORITY—REPAIRS—LAND CONTRACTS.

Judgment for amount expended by plaintiffs in repairs on house for specific performance of land contract for sale of which they had negotiated with defendant corporation's credit manager was proper where such agent had had authority to authorize repairs but not to sell the property.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted October 8, 1946. (Docket No. 40, Calendar No. 43,497.) Decided April 8, 1947.

Bill by James S. Richards and wife against the Lowrie & Webb Lumber Company, a Michigan corporation, for specific performance of contract to sell real estate. Decree for defendant. Plaintiffs appeal. Affirmed.

*Samuel S. Greenberg* (*Leonard J. Grabow,* of counsel), for plaintiffs.

*Grant M. Hales,* for defendant.

DETHMERS, J. Plaintiffs seek specific performance of an agreement for the sale of lands, signed in behalf of defendant corporation, as vendor, by its credit manager, Walter J. Whitman. The corporation defends on the ground that Whitman acted without authority. From a decree denying specific performance and awarding plaintiffs a judgment for $447.81 for repairs made by them on the premises, plaintiffs appeal.

Since 1936 plaintiffs occupied the premises as defendant's tenants. Plaintiffs' arrangements for the lease and subsequent dealings thereunder, such as securing authorizations for repairs and making payments of the $90 monthly rental, were all with Mr. Whitman. Defendant company's president, when approached by plaintiffs about repairs, advised them that all business in connection with the property should be transacted with Whitman, that he had authority to make repairs.

In September, 1943, Whitman told plaintiffs that defendant desired to sell the property and plaintiffs indicated a desire to buy. Whitman stated that he would find out from the defendant company what terms would be acceptable and prepare a purchase agreement accordingly. On September 21st, Whitman brought the agreement to plaintiffs and it was signed by them and him. Plaintiffs gave Whitman a check for $500 as a binder and by the terms of the agreement undertook to pay the rest of the down payment upon execution of a land contract and the balance of the principal thereafter in $100 monthly payments in conformity with terms to be

included in such contract. Execution of the contract was to wait approval by plaintiffs' attorney of an abstract which Whitman was to have brought down to date. Plaintiffs testified that in subsequent weeks they asked Whitman why the abstract had not been delivered to their attorney, expressed a desire to start making payments on the contract, and inquired as to what should be done about certain necessary repairs; that Whitman's reply was that the abstract had not yet been completed by the abstractors, but that they need feel no concern because the deal would go through, that they could send in the monthly payments, which would be credited on the contract when it was executed, and that making repairs was now up to them as they had bought the property. Plaintiffs further testified that they thereupon made repairs costing $447.81, and sent in to defendant company's office checks for $300 for what they claimed to be the monthly payments on the contract for the months of October, November and December. Whitman, conceding all this, testified that plaintiffs knew the agreement was taken by him subject to approval by the company; that he had told plaintiffs they would be reimbursed for repairs made while the deal was pending, if it did not go through; that the plaintiffs' $500 check was never cashed nor credited upon the company's books; that the plaintiffs' checks for $300 were credited to plaintiffs' rent account.

On December 2d, Whitman returned the $500 check to plaintiffs and advised them that defendant would not sell.

The proofs failed to show that Whitman had actual authority to sign the agreement for the corporation. Plaintiffs urge, however, that in the case of corporations the difficulty of showing the agent's authority by direct and positive proof is recognized

and such proof is not imperative; that the existence and extent of the agency may be inferred from attending facts and circumstances. *Douglas* v. *Insurance Company of North America,* 215 Mich. 529. When a principal cloaks his agent with apparent authority to do an act not actually authorized, the principal is bound thereby. *Kopprasch* v. *New York Indemnity Company,* 250 Mich. 491; *Mossman* v. *Millenbach Motor Sales,* 284 Mich. 562. But, as it is said in the case of *Maryland Casualty Company* v. *Moon,* 231 Mich. 56, 62:

"The apparent authority for which the principal may be liable must, however, be traceable to him and cannot be established by the acts and conduct of the agent."

In the case before us, the circumstances were not such that it may be said that defendant placed Whitman in a position misleading to plaintiffs as to the extent of his powers. Plaintiffs knew that he had exercised authority over leasing, collecting rentals and making repairs. Nowhere in the record does it appear that plaintiffs had ever heard of or observed Whitman exercising greater authority such as would indicate to them a power on his part to sell property belonging to defendant, or that defendant had done anything which might serve to place Whitman in a position of apparent authority to that extent. That plaintiffs did not believe he possessed such authority appears from the fact that some time after the agreement was signed they approached him on the subject of repairs. This was hardly consistent with a belief on plaintiffs' part that they held a purchase agreement binding on defendant; it suggests, rather, that they knew the agreement was still in need of approval by defendant. The burden of establishing Whitman's authority, actual or apparent, was on

the plaintiffs. *Goodspeed* v. *MacNaughton, Greena-walt & Co.,* 288 Mich. 1. Such burden the plaintiffs failed to sustain.

Our attention is directed to authorities on the subject of ratification and, in that connection, plaintiffs point to defendant's acceptance of the checks for $300 sent in by them as payments on the contract. The uncontradicted testimony is that Whitman was in charge of defendant's office and its bookkeeping department; that these checks came to that department under his supervision and he caused them to be credited to plaintiffs' rent account on defendant's books. Had Whitman, without authority from defendant, accepted and credited the checks on a contract account on defendant's books, the case would be no different. His subsequent unauthorized actions in that respect could not operate as a ratification by the corporation of his unauthorized signing of the contract in the first place. Nothing amounting to ratification was shown to have been done or authorized by the defendant corporation.

Parties' briefs discuss the application of the statute of frauds * and the effect thereon of claimed part performance.† Inasmuch as we are in accord with the finding of the trial court that no authority was shown to have been given Whitman to sell the premises, consideration of the possible effect of the statute on such authority, had it been given, becomes academic.

Plaintiffs also say that defendant's conduct, in accepting the checks for $300 and permitting plaintiffs to make repairs on the property, "gave rise to an equitable estoppel against the assertion of invalidity and unenforceability." We have already alluded to

---

* See 3 Comp. Laws 1929, § 13413 (Stat. Ann. § 26.908).—RE-PORTER.

† See 3 Comp. Laws 1929, § 13415 (Stat. Ann. § 26.910).—RE-PORTER.

Whitman's testimony touching these matters and his apprising plaintiffs that the agreement required defendant's approval.

"One who is cognizant of all material facts can claim nothing by estoppel." *Cudahy Brothers Co. v. West Michigan Dock & Market Corp.*, 285 Mich. 18, 26.

But were Whitman's testimony in this respect to be disbelieved, the plaintiffs, on the basis of their own testimony, would still be in the position of having relied, to their prejudice, upon the words and actions not of the principal, the defendant corporation but, rather, upon the unauthorized words and actions of the agent, Whitman. As said in *Dobranski v. Lincoln Mutual Casualty Co.*, 275 Mich. 1, 9:

" 'There can be no estoppel unless a party is misled to his prejudice *by the one against whom it is* set up.' *Shean v. U. S. Fidelity & Guaranty Co.*, 263 Mich. 535."

See, also, *Walton v. Hymans*, 302 Mich. 256, and cases cited therein (262–263).

The court properly allowed judgment for plaintiffs in the amount of $447.81 as reimbursement for repairs made by them on the authorization of Whitman, this having been within the scope of the latter's authority.

Decree affirmed, with costs to defendant.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred.